UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOSE L. ALVES,

                Plaintiff,

          -against-

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------------X

13-CV-3898 (RPP)

**OPINION & ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      The Plaintiff Jose L. Alves (the "Plaintiff" or "Alves"), represented by counsel, brought this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner" or the "Defendant") denying him Disability Insurance Benefits. (Compl., ECF No 1.) Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mot."), ECF No. 19; Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), ECF No. 27; Def.'s Reply Mem. in Opp'n to Pl.'s Cross-mot. for J. on the Pleadings and in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Reply"), ECF No. 28.)

      For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is GRANTED and Alves' motion is DENIED.

## I.   FACTS

### A.  Procedural Background

On November 10, 2010, Alves filed for Disability Insurance Benefits, alleging onset of disability on April 4, 2008.  (Admin. and Supplemental Rec. Filed by the Comm'r ("R.") at 107-08, ECF No. 4.)  Alves' application was denied on January 4, 2011, because although he had a back problem, he was found to be able to perform light work.  (R. at 49-53.)  Alves requested a hearing before an Administrative Law Judge ("ALJ") to review Alves' disability case.  (R. at 61-62.)  On March 21, 2012, Alves appeared with counsel before ALJ Harold Glanville.  (R. at 28-46.)  On March 23, 2012, ALJ Glanville issued a decision finding that Alves could find suitable work in the national economy, and therefore, was not disabled under the Act.  (R. at 14-24.)  On May 24, 2012, Alves requested review by the Appeals Council.  (R. at 7.)  On April 11, 2013, the Appeals Council denied Alves' request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-6.)  This action followed.

### B.  Non-Medical Evidence Before the Administrative Law Judge

Born in 1975, Jose Alves was thirty-six years old at the time of the ALJ's decision.  (R. at 128.)  He speaks and writes little English; Alves attended school through the eighth grade in Portugal and never graduated high school.  (R. at 35.)  He worked in construction until April 2008, when he injured his back at work by lifting and shoveling gravel, dirt, and sand.  (R. at 34, 132, 155.)  His job required him to stand and walk eight hours a day and lift up to one hundred pounds.  (R. at 133, 156.)  The vocational expert testified that Alves' past relevant work was considered heavy, semi-skilled work.[1]  (R. at 37.)

---

[1] Heavy work involves lifting no more than one hundred pounds at a time, with frequent lifting and carrying of objects weighing up to fifty pounds.  20 C.F.R. § 404.1567(d).

After his back injury, Alves lived in a house with his family.  (R. at 145.)  He would walk for an hour in the morning and in the afternoon, resting every thirty minutes, shop once a week, and read books and watch television daily.  (R. at 145, 148-49, 150.)  He reported to the Social Security Administration that he could care for his personal needs, but could not drive for longer than twenty minutes, carry heavy items, do house and yard work, or lift his daughter because of back pain.  (R. at 146-48.)  In the same report, Alves stated that he could not lift more than five pounds, stand more than fifteen to twenty minutes, walk more than thirty minutes without a ten to fifteen minute break, sit more than ten minutes at a time, kneel, or squat without experiencing pain.  (R. at 150-51, 153.)  He also had some difficulties climbing stairs.  (R. at 150.)  Alves took Advil and Zanaflex, a muscle relaxant, three times a day, and Nabumetone as needed for his pain; they temporarily relieved pain for an hour or two, but made him drowsy.  (R. at 33, 153.)

### C.  Medical Evidence Before the Administrative Law Judge

Alves injured his back at work in April 2008.  (R. at 34, 132, 155.)  Between April, 2008 and September, 2009, Alves visited several physicians to treat his back injury.  Drs. Richard Peress of Orthopaedic Spine Surgery ("Dr. Peress"), David Wellin of Industrial Medicine Associates, PC ("Dr. Wellin"), and Jerome Moga of Riverfront Medical, PC ("Dr. Moga") recommended lumbar discectomy surgery.  (R. at 194, 198, 200, 202, 276, 279, 287, 291, 296, 298.)

On October 29, 2009, Dr. Peress performed a microdiscectomy.  (R. at 310-11.)  Afterwards, Alves continued to visit physicians for evaluations.  Dr. Peress and Dr. Barry Krosser of Mount Kisco Medical Group ("Dr. Krosser") recommended decompression and spinal lumbar fusion surgery.  (R. at 228, 231, 306-07.)  Dr. Suraj Malhotra of North Disability Services ("Dr. Malhotra") opined that the Plaintiff had a bending limitation, (R. at 213), for which Dr. Wellin and

Dr. Christopher Cassels ("Dr. Cassels") of Industrial Medicine Associates prescribed physical therapy.  (R. at 204, 236-37.)

### i.  Medical Records Before the Surgery of October 29, 2009

On April 7, 2008, Alves arrived at the Phelps Memorial Hospital Center complaining of left buttock pain, radiating to his left leg.  (R. at 179.)  An MRI of his lower back revealed degenerative disc disease with a large central, left-sided, herniated disc fragment.  (R. at 181.)

Alves followed up with Dr. Peress on April 8, 2008.  (R. at 274-76.)  On examination, Dr. Peress found that Alves had back pain, severe restriction on his range of motion, and a limp.  (R. at 274.)  Dr. Peress diagnosed an acute disc herniation, lumbar compressive neuropathy, and disarrangement of the lumbar spine.  (R. at 276.)  In a Workers' Compensation narrative report, Dr. Peress indicated that as of April 7, 2008, Alves had a temporary total disability caused by the injury he sustained on the job.  (R. at 276.)

At a follow-up appointment with Dr. Peress on April 15, 2008, Alves still limped, but could rise from a chair without difficulty.  (R. at 278.)  He reported that his back pain was somewhat better, though he still had extremely sharp and shooting leg pain.  (R. at 278.)  A physical examination continued to show diminished range of motion in his lumbar spine.  (R. at 279.)  Dr. Peress recommended epidural steroid injections.  (R. at 279.)

On July 14, 2008, Dr. Wellin performed an independent medical examination at the request of Alves' Workers' Compensation insurance. (R. at 193-194.)  Dr. Wellin concluded that Alves had a partial disability under the disability standards of the New York State Workers' Compensation Board.  (R. at 194.)  Dr. Wellin diagnosed Alves with a lower back strain with a herniated disc superimposed on preexisting degenerative disc disease and presumed preexisting disc herniation.  (R. at 194.)  Alves' range of motion was limited in all directions.  (R. at 194.)  Dr.

Wellin recommended lumbar epidural steroid injections and concluded that surgery would also be recommended if symptoms worsened or continued.  (R. at 194.)

On October 21, 2008, Alves returned to Dr. Peress, who examined the Plaintiff, stating in a Workers' Compensation narrative report that the Plaintiff had attained maximum improvement from the epidural steroid injunctions.  (R. at 19, 291.)  Alves did not have a limp, but he experienced bending restrictions.  (R. at 19, 291.) Dr. Peress concluded that Alves had a temporary total disability as a result of his back injury, and could not perform any kind of lifting, bending, climbing, or prolonged sitting for greater than fifteen minutes at a time.  (R. at 291.)  Dr. Peress requested authorization from the New York State Workers' Compensation Board for artificial disc replacement with an anterior lumbar discectomy.  (R. at 291.)

Dr. Wellin re-examined Alves on January 5, 2009.  (R. at 196-97.)  He opined that Alves had a partial disability under the standards of the New York State Workers' Compensation Board. (R. at 198.)  Alves reported no further treatment for his back after June 2008.  (R. at 196.)  His symptoms had continued unabated, and he relayed that his treating physician, Dr. Peress, had requested authorization for artificial disc replacement.  (R. at 196.)  On examination, Alves walked with a mild limp although he could heel-and-toe walk and squat.  (R. at 197.)  Dr. Wellin suggested a discectomy, since Alves' symptoms had not responded to non-operative treatment.  (R. at 198.)

On March 17, 2009, Alves was examined by orthopedist Dr. Moga who diagnosed him with lumbar herniated disc syndrome and concluded that Alves had a partial disability under the disability standards of the New York State Workers' Compensation Board.  (R. at 200.)  Alves stated that he required several hours of rest during the day.  (R. at 199.)  He took neurological agent Lyrica twice a day, anti-inflammatory Arthrotec three times a day, and Tylenol occasionally. (R. at 199.)  Dr. Moga stated that Alves was not able to return to construction.  (R. at 200.)

At a June 1, 2009, follow-up visit with Dr. Peress, Alves reported experiencing mechanical instability, and varying degrees of radicular pain, muscle weakness, cramping, and numbness in the left leg.  (R. at 298.)  On examination, Alves limped and had abnormal posture, appearing very uncomfortable climbing onto the examination table.   (R. at 298.)   His ability to bend was unchanged from prior visits, but his extension was accompanied by pain in the lower back.  (R. at 298.)    Alves was not interested in artificial disc replacement, but wanted to proceed with microdiscectomy.    (R. at 298.)    However, Dr. Peress opined that microdiscectomy with decompression would not successfully resolve Alves' symptoms, and recommended lumbar spine fusion.  (R. at 298.)

Alves drove himself to a follow-up visit with Dr. Peress on August 11, 2009.  (R. at 250.)  Dr. Peress maintained his recommendation for lumbar spine fusion.  (R. at 250.)  Alves reported that he could sit for twenty minutes, and had difficulty getting up.  (R. at 250.)  Dr. Peress found that Alves' motor function was normal and he walked without assistive devices.  (R. at 250).  Alves' range of motion was decreased and he experienced pain when bending.  (R. at 250.)  He was taking Zanaflex, Lyrica, and Arthrotec for the pain.  (R. at 250.)

Alves returned to Dr. Moga on August 19, 2009.  (R. at 202.)  Dr. Moga found that Alves had discomfort with forward bending at the waist to forty-five degrees.  (R. at 202.)  Based on the Workers' Compensation Board guidelines, Dr. Moga concluded that Alves had a partial disability and was able to do sedentary work, with no lifting over ten pounds.  (R. at 202.)   Dr. Moga also noted that Alves would need to get up from the sitting position and move around on a regular basis. (R. at 202.)

In a Workers' Compensation Board report on September 17, 2009, Dr. Peress stated that Alves could not return to work because he could not bend, sit longer than twenty minutes, or walk

longer than thirty minutes.  (R. at 302.)  In October 2009, Dr. Peress performed lumbar microdiscectomy surgery.  (R. at 186, 310-311.)

### ii.  Medical Records After the Surgery of October 29, 2009

Upon a December 8, 2009, post-operative visit, Dr. Peress stated in a Workers' Compensation Board report that Alves could not return to work due to residual neuropathy and limited range of motion.  (R. at 254-55.)  In the same report, Dr. Peress noted that Alves walked normally and had normal posture, extension to fifteen degrees without pain, bending to thirty degrees and full motor strength.  (R. at 254-55.)

Dr. Wellin re-examined Alves on January 4, 2010, at the request of the New York State Insurance Fund, and concluded that he had a partial disability.  (R. at 205.)  Alves reported a worsened condition complaining of intermittent lower back pain with numbness and tingling in the left leg.  (R. at 203.)  On examination, Alves walked without a noticeable limp, and could heel-and-toe walk and squat.  (R. at 204.)  He bent to sixty degrees, extended to fifteen degrees, and laterally bent to fifteen degrees on each side.  (R. at 204.)  Alves had full strength in a lower extremity muscle groups.  (R. at 204.)  Dr. Wellin opined that Alves was suited for sedentary work.  (R. at 205.)

On June 7, 2010, Dr. Tucker performed an independent medical examination at the request of the New York Insurance Fund.  (R. at 206-209.)  Dr. Tucker stated that Alves should be counseled toward looking for work that is less physically demanding.  (R. at 208.)  On examination, Dr. Tucker found that Alves limped minimally with no back spasms.  (R. at 207.)  Dr. Tucker assessed that Alves could not lift, push, or pull heavy objects, perform prolonged bending or lifting, climb, crawl, or squat.  (R. at 209.)

Dr. Malhotra performed a consultative orthopedic examination on December 29, 2010, at the request of the Commissioner.  (R. at 212-14.)  Dr. Malhotra opined that Alves had a moderate limitation in bending.  (R. at 213.)  On examination, he had a normal gait, could heel-and-toe walk and squat fully, and used no assistive devices.  (R. at 214.)  He needed no help changing for the examination or getting on and off the examination table, and he could rise from a chair without difficulty.  (R. at 214.)  Dr. Malhotra found that Alves could fully bend his cervical spine and had no spasms.  (R. at 214.)  Alves had some moderate limitation in bending and extending the lumbar spine.  (R. at 214.)

On February 15, 2011, Dr. Neil Patel examined Alves at the request of Dr. Peress.  (R. at 243-44.)  Alves denied any generalized lethargy, weakness, or malaise.  (R. at 243.)  Dr. Patel observed that Alves was awake and alert.  (R. at 243.)  He found that there Alves had pain with spinal flexion and there was lumbar paraspinal tenderness in the L4-L5 region.  (R. at 243.)  Alves also displayed motor strength 5/5 in the lower extremities and was able to heel-and-toe walk. (R. at 244.)

On June 2, 2011, Dr. Krosser evaluated Alves, and suggested operative care, and noted that his chances of returning to a heavy lifting job would remain relatively low.  (R. at 227-28.)  On examination, Alves had a normal gait, good motion in his hips, good reflexes, and no atrophy in his legs.  (R. at 227.)  He could heel-and-toe walk, but had pain with bending, abduction, and external rotation.  (R. at 227.)  Dr. Krosser indicated that Alves would most likely need a one-to-two level lumbar decompression and fusion surgery.  (R. at 228.)

Alves saw Dr. Cassels on July 20, 2011 for a New York State Insurance Fund examination. (R. at 235.)  Dr. Cassels opined that Alves could work in a strictly clerical capacity with severe lifting restrictions.  (R. at 236.)  Alves could heel-and-toe walk and step up and down on a step

8

without difficulty.  (R. at 236.)  His range of motion was limited, and there was a considerable degree of lumbar spasm.  (R. at 236.)

Alves returned to Dr. Krosser on September 8, 2011.  (R. at 231.)  Dr. Krosser reviewed a recent MRI, which showed significantly increased degenerative disc disease and some degenerative change with a small herniation.  (R. at 231.)  On November 10, 2011, Alves revisited Dr. Krosser, with continued complaints of lower back and leg pain.  (R. at 306).

Dr. Moga re-examined Alves on December 2, 2011.  (R. at 313-15.)  Dr. Moga opined that Alves could bend forward at the waist to twenty degrees, and had lumbosacral and sacroiliac tenderness in the standing position.  (R. at 314.)  Alves reported that his condition had worsened since his surgery and he was afraid of undergoing additional surgery.  (R. at 313.)  He also reported that he could walk for twenty minutes before needing to sit down.  (R. at 313.)  Alves returned to Dr. Krosser on March 13, 2012.  (R. at 307.)  Dr. Krosser indicated that surgery was still being held off.[2]  (R. at 307.)

## II.    LEGAL STANDARD

### A.  Scope of Judicial Review

Judicial review of the Commissioner's decision denying disability benefits is strictly limited.  Baneky v. Apfel, 997 F. Supp. 543, 544 (S.D.N.Y. 1998).  The role of the federal courts is to decide whether the Commissioner has applied the appropriate legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3) (2010); see also Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998).  If the Court finds that there is substantial evidence for the determination, the Commissioner's decision must be

---

[2] On March 15, 2013, Dr. Abrahams performed decompression and fusion surgery.  (Pl.'s Mot., Ex. 1, at 1.)  The surgery was not in the medical record because it occurred after the ALJ's decision.  (R. at 24.)

upheld, even where substantial evidence may support the plaintiff's position and despite that the

Court's independent analysis of the evidence may differ from the Secretary's.  Rosado v. Sullivan,

805 F. Supp. 147, 153 (S.D.N.Y. 1992) (internal citations omitted).  Substantial evidence in this

context has been defined as "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197,

229 (1938)).

### B.  Disability Determination

A person is considered disabled for Social Security benefits purposes when he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A) (2004).

The determination whether a person is under a disability within the meaning of the Social

Security Act belongs to the Commissioner.   20 C.F.R. § 404.1527(d)(1) (2012).   The

Commissioner has established a five-step sequential evaluation for adjudication of disability

claims, set forth at 20 C.F.R. § 404.1520, which the Second Circuit has articulated as follows:

> First the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful activity. If he is not, the [Commissioner] next considers whether
> the claimant has a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical evidence, the
> claimant has an impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity. Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether, despite

the claimant's severe impairment, he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

DeChirico v. Callahan, 134 F.3d 1177, 1179 (2d Cir.1998) (internal citation omitted).

A claimant bears the burden of proof as to the first four steps. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). If a claimant is able to meet his burden of proof at the first four steps, the burden then shifts to the Commissioner to provide evidence to show that jobs exist in significant numbers in the national economy that the claimant can perform, given his residual functional capacity and vocational profile of age, education, and work experience. Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002). The Commissioner must consider the entire record, including any objective medical evidence, medical opinions based on such evidence, subjective evidence of pain or disability, and the plaintiff's educational background, age, and work experience. See Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (internal citation omitted).

## A. The ALJ's Application of the Five-Step Sequence to the Petitioner's Claim

On March 23, 2012, ALJ Glanville issued a written decision denying Alves' application for disability insurance benefits, finding that he had not been under a disability, as defined by the Social Security Act, from April 4, 2008, through the date of the ALJ's decision. (R. at 24.)

At step one, ALJ Glanville found that Alves had not engaged in substantial gainful activity since April 4, 2008, the alleged onset date. (R. at 16.) At step two, ALJ Glanville found that Alves had the following severe impairments: a lumbar impairment, a left leg condition, and high blood pressure. (R. at 16.) At step three, the ALJ concluded that Alves did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

11

Before proceeding to step four, ALJ Glanville determined that Alves had the residual functional capacity to perform light work, except that he need to alternate positions every two hours, can lift or carry up to ten pounds frequently, carry twenty pounds occasionally, and had a moderate limitation in bending.  (R. at 21.)  In making this determination, ALJ Glanville found that Alves' statements concerning the intensity, persistence, and limiting effects of his injury symptoms were not fully credible.  (R. at 21.)

At step four, ALJ Glanville found that Alves was unable to perform his past relevant work as a construction worker because the demands exceeded his residual functional capacity.  (R. at 22.)  At the fifth step, ALJ Glanville considered Alves' age, education, work experience, residual functional capacity, and testimony of the vocational expert to determine that there were jobs that existed in significant numbers in the national economy that Alves could perform.  (R. at 23-24.) At Alves' hearing, ALJ Glanville asked a vocational expert to consider a hypothetical person with the same age, education, and work experience as Alves, who could perform light work, with the ability to alternate positions every two hours between sitting and standing.  (R. at 38.)  The vocational expert testified that such a person could perform the representative unskilled, light work jobs of assembler of small products, routing clerk, and machine tender.  (R. at 38-41, 44.) Accordingly, ALJ Glanville found that the Plaintiff was not disabled within the meaning of the Act from April 4, 2008, through the date of his decision, March 23, 2012.  (R. at 24.)

## II.   DISCUSSION

Alves argues that ALJ Glanville's residual functional capacity determination was not supported by substantial evidence and was the result of legal error, and that the ALJ improperly relied on the vocational expert's testimony that there were jobs in the national and local economy that Alves could perform.  (Pl.'s Mot. at 1.)  The Defendant cross-moves this Court to affirm the

Commissioner's decision on the basis that ALJ Glanville's decision is supported by substantial evidence.  (Def.'s Mot. at 14-21.)

### A.  The ALJ's Residual Functional Capacity Determination

ALJ Glanville determined that Alves had the residual functional capacity to perform a range of light work or sedentary work.  (R. at 21.)  Alves argues that the ALJ's determination is in error because: (1) the ALJ violated the treating physician rule by not granting controlling weight to the opinions of Drs. Peress and Krosser; (2) the ALJ should have deferred to the findings of disability of the doctors that Alves visited in connection with his Workers' Compensation claim; (3) the ALJ did not properly assess Alves' credibility; and (4) the ALJ did not fully develop the hearing record.  (Pl.'s Mot. at 1-20.)

Here, as shown in the analysis of Alves' arguments set forth below, the ALJ's determination that Alves had the residual functional capacity to perform a range of light or sedentary work is supported by substantial evidence on the record.  The Court considers each of Alves' arguments in turn.

### 1.  ALJ Glanville's Decision Did Not Violate the Treating Physician Rule

Alves argues that the ALJ did not afford sufficient weight to the treating opinions of Drs. Peress and Krosser, who concluded that Alves was totally disabled.  (Pl.'s Mot. at 15-16, 18.) Under 20 C.F.R. § 1527(d)(1), the ALJ is responsible for determining whether an applicant is disabled.  In doing so, the ALJ reviews all medical findings, but "a statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that [the claimant is] disabled."   20 C.F.R. § 1527(d)(1).   Rather, "[t]he Social Security

Administration considers the data that physicians provide, but draws its own conclusions as to whether those data indicate disability." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

In reviewing medical opinions, the ALJ considers, among others, the medical opinions of treating sources. 20 C.F.R. § 1527(c)(2). The treating physician rule generally requires deference to the medical opinion of a treating physician, but the opinion of the treating physician is not afforded controlling weight where "the treating physician issued opinions that are inconsistent with other substantial evidence in the record, such as the opinions of other physicians." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted); 20 C.F.R. § 1527(c)(2).

While Alves' treating physicians, Drs. Peress and Krosser, opined that Alves was disabled, ALJ Glanville determined that these opinions were not supported by the record as a whole. (R. at 22.) In making the determination, ALJ Glanville considered the medical evidence provided by Drs. Peress and Krosser. (R. at 19-20, 24.) For example, on October 2008, Dr. Peress evaluated Alves and found that although Alves experienced muscle tightness on his sides and restricted bending in his waist, he was able to walk without a limp. (R. at 19, 291.)

Dr. Krosser evaluated Alves on June 2, 2011, and found that Alves had no acute distress, could get on and off of the examining table, and was able to walk with a normal gait, only experiencing pain when bending. (R. 20, 227.) Based on their medical findings, both Drs. Peress and Krosser concluded that Alves was not able to work. (R. at 228, 291.) However, ALJ Glanville found that Alves' medical conditions could impose some limitations, but the record did not support that he was prevented from performing all work-related activities. (R. at 22.)

In so finding, the ALJ gave weight to the opinion of Drs. Malhotra and Moga, who both examined Alves and opined that he was able to perform some work. (R. 22.) Dr. Malhotra evaluated Alves in December 2010, and concluded that Alves had a moderate limitation in

bending.  (R. 20, 212-214.)  Dr. Malhotra also found that Alves had no acute distress, could fully squat and stand unassisted, and needed no help getting on and off the examining table or rising from the seated position.  (R. at 22, 214.)  Alves had full bending and extension movement in his cervical spine, experiencing no pain or spasms.  (R. at 214.)

Alves argues that ALJ Glanville unreasonably gave weight to Dr. Malhotra's opinion that Alves had a moderate limitation in bending because Dr. Malhotra is not a specialist.  (Pl.'s Mot. at 16.)  This argument lacks merit.  Although specialization may be a ground to weigh a doctor's opinion more heavily under 20 C.F.R. § 404.1527, it does not follow that non-specialization is a reason to discount a medical professional's opinion that is otherwise supported by the medical record as a whole.  Here, Dr. Malhotra's opinion that Alves had a moderate limitation in bending was supported by the treatment notes of Drs. Moga, Wellin, Tucker, and Cassels, all of whom noted that Alves had some limitation in flexion of the spine.  (R. at 202, 204, 208, 236.)

ALJ Glanville also gave some weight to the opinion of Dr. Moga.  (R. at 22.)  Dr. Moga examined Alves on March 17, 2009, and found that Alves had discomfort with forward bending at the waist to thirty degrees, (R. at 200). After an examination of Alves on August 19, 2009, Dr. Moga found that Alves had discomfort with forward bending at the waist to forty-five degrees. (R. at 202.)  Dr. Moga assessed that Alves could perform sedentary work, lifting no more than ten pounds, and alternating sitting and standing positions.  (R. at 19, 202.)

ALJ Glanville also outlined the medical findings of Drs. Wellin, Tucker, and Cassels.  All three doctors examined Alves and, on the basis of those examinations, opined that Alves was able to perform some work.  For example, Dr. Wellin evaluated Alves on July 14, 2008 and January 4, 2010, and found that Alves ambulated without a noticeable limp, was able to heel-and-toe walk and squat, and that Alves' back measured flexion of sixty degrees.  (R. at 19-20, 193, 203-05.)  Dr.

Wellin opined that Alves was suitable for sedentary work.  (R. at 205.)  Dr. Tucker, who examined Alves on June 7, 2010, counseled Alves to look for work that was "less physically demanding" than his previous work.  (R. at 209.)  Examining Alves on July 20, 2011, Dr. Cassels found that Alves could heel-and-toe walk without difficulty, and could step up and down without difficulty.  (R. at 236.)  Dr. Cassels opined that Alves could work with "severe lifting restrictions."  (R. at 236.)  The ALJ's finding that Alves was able to perform a range of light and sedentary work is consistent with the opinions of Drs. Moga, Wellin, Tucker, and Cassels, that Alves would be able to return to work.

ALJ Glanville's decision to discount the opinions of Drs. Peress and Krosser did not violate the treating physician rule, because their opinions were inconsistent with the opinions of other substantial evidence on the record, including the opinions of Drs. Malhotra, Moga, Wellin, Tucker, and Cassels.

### 2.  ALJ Glanville Reasonably Did Not Defer to Opinions of Disability Given by Workers' Compensation Doctors

Alves next argues that ALJ Glanville should have deferred to the opinions of disability given by doctors who examined Alves in connection with his Workers' Compensation claim.  (See, e.g., R. at 198, 200, 276, 291, 314.)  However, an opinion rendered in the context of a Workers' Compensation claim is not instructive with respect to a claim under the Act.  Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Worker's Compensation Board, the standards which regulate Workers' Compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act.  Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

Therefore, it was reasonable for ALJ Glanville to not defer to the opinions of disability made by doctors applying the standards of New York State Workers' Compensation Law. Moreover, all of the doctors who examined Alves in connection with his Workers' Compensation claim, including Drs. Tucker, Moga, Wellin, Cassels, Patel, and Peress, found that Alves was only temporarily or partially disabled,[3] and, as indicated above, most of these doctors opined that Alves would be able to return to work in some capacity.  (R. at 198, 200, 205, 236, 244, 276, 291, 314.) These opinions are not incompatible with the ALJ's finding that Alves could perform a range of light or sedentary work.

### 3.  ALJ Glanville Properly Assessed Alves' Credibility

Alves argues that ALJ Glanville unreasonably discredited his statements by discounting his pain allegations and his complaints of drowsiness as a side effect of Zanaflex, a muscle relaxant he was taking to treat his back pain.  (Pl.'s Mot. at 17-20.)  The ALJ should consider the claimant's statements regarding pain and other symptoms in establishing disability.  Petty v. Colvin, No. 12 Civ. 1644 (LTS) (RLE), 2014 WL 2465109, at *11 (S.D.N.Y. June 2, 2014).  The ALJ is required to take the claimant's reports of pain and other limitations into account, including, inter alia, "type, dosage, effectiveness, and adverse side effects of medication taken by the individual to alleviate pain or symptoms." 20 C.F.R. §§ 404.1529(c)(3)/ However, the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).

ALJ Glanville concluded that Alves' complaints of disabling symptoms and limitations were not fully credible, finding that Alves' allegations of pain were inconsistent with the medical

---

[3] Under the Social Security Act, there is no concept of "partial disability."  The test is the inability to perform any substantial gainful activity.  See 42 U.S.C. § 423(d)(1)(A).

record and his activities of daily living.  (R. at 21.)  The ALJ noted that in the Social Security Function Report, which Alves filled out on December 6, 2010, Alves reported taking walks, driving, going out alone, going shopping, and being able to handle money or finances.  (R. at 145-49.)   In that same report, Alves reported limitations in driving, and walking, standing, and squatting.  (R. at 145-47, 150-51.)  During his hearing with ALJ Glanville on March 21, 2012, Alves reiterated that walking, driving, and sitting caused him pain.  (R. at 32-33.)  However, these allegations of pain are inconsistent with the report of Dr. Wellin, who in January 2010 reported that Alves ambulated without a noticeable limp, and was able to heel-and-toe walk and squat, (R. at 204), the report of Dr. Malhotra, who in December 2010 examined Alves and found that Alves could fully squat and stand unassisted, and needed no help getting on and off the examining table or rising from the seated position, (R. at 22, 214), and the report of Dr. Cassels, who examined Alves on July 20, 2011, and found that Alves could heel-and-toe walk without difficulty, and could step up and down without difficulty.  (R. at 236.)

On August 11, 2009, Dr. Peress noted that Alves drove himself to a doctor's appointment. (R. at 250.)  Further, a residual functional capacity assessment of Alves on December 31, 2010, showed that he could stand, walk, and sit with normal breaks for six hours in an eight hour workday.  (R. at 220.)  The assessment also indicated that the he was able to occasionally lift twenty pounds and frequently lift ten pounds.  (R. at 220.)  Evidence in the record showing Alves' normal gait, ability to get on and off the examining table without assistance, ability to squat, walk on heels and toes, and drive himself to appointments, was inconsistent with his allegations of disabling pain.

ALJ Glanville similarly discredited Alves' claim that Zanaflex required him to need to sleep for an hour in the middle of the day.  (R. at 43-44.)  The ALJ found that while Alves'

medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not fully credible to the extent alleged." (R. at 21.)

ALJ Glanville's credibility finding is supported by a review of the entirety of the record. Alves reported that Zanaflex made him drowsy at the hearing before the ALJ, (R. at 43), in a Function Report that he filled out on December 6, 2010, (R. at 153), and on an undated Disability Report Appeal. (R. at 141.) However, Alves did not complain about the side effects of Zanaflex to his physicians. For example, at an examination on December 8, 2009, Dr. Peress noted that Alves was taking Zanaflex as a muscle relaxant, did not note any drowsiness or side effects. (R. at 255.) On November 22, 2010, Dr. Peress suspended Alves' prescription of Arthrotec, when Alves complained that it upset his stomach, but Dr. Peress continued to prescribe Zanaflex and no complaints of side effects are indicated. (R. at 269.) Instead, the medical records indicate that Alves was "awake and alert." (R. at 243.) Therefore, the record supports the ALJ's conclusion that Alves' statements about the side effects of Zanaflex were not fully credible.

Additionally, ALJ Glanville's decision to not fully credit Alves' complaints of pain and other limitations was supported by ALJ Glanville's observations during the hearing. ALJ Glanville observed that Alves seemed in no acute or emotional distress, and was able to sit through the forty-minute hearing without complaining of pain, discomfort, incommodity, or the need to stand up. (R. at 21.) As the ALJ was able to observe Alves' demeanor while testifying, such observations are accorded special deference. See Marquez v. Colvin, No. 12 Civ. 6819 (PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (stating the reviewing court "must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe the Plaintiff's demeanor while testifying").

19

ALJ Glanville met his burden in finding Alves' claims not entirely credible because the objective medical evidence and the ALJ's observations at the hearing failed to support Alves' claims of total disability based on pain and side effects of his medication.

### 4.  ALJ Glanville Sufficiently Developed the Record

Finally, Alves argues that ALJ Glanville improperly assessed Alves' credibility without sufficiently developing Alves' testimony at the hearing regarding his daily activity limitations. (Pl.'s Mot. at 19.)  He argues that ALJ Glanville did not question him about the intervals of rest taken while walking and driving, or how long Alves cared for his children or what kind of care he provided.  (Pl.'s Mot. at 19.)  Consequently, Alves argues that the administrative record was incomplete.  (Pl.'s Mot. at 19.)

However, the ALJ is under no obligation to further develop the administrative record when there are no obvious gaps within the record, and where the ALJ already possesses a complete medical history.  Rosa v. Callahan, 168 F.3d 72, 70 n.5 (2d Cir. 1999).  Here, ALJ Glanville was not obligated to further develop the administrative record because it did not contain any gaps. Although ALJ Glanville never questioned Alves about the breaks taken while walking and driving, and the extent to which he did childcare, (R. at 30-46), the administrative record already contained this information.  (R. at 145-54, 212.)  In the Social Security Administration's Function Report, Alves reported he could only walk for thirty minutes before resting, and that he could not drive for more than twenty minutes.  (R. at 150.)  He reported to Dr. Malhotra that he cared for his children two times per week, (R. at 212), and that he could no longer lift his daughter.  (R. at 146.)  ALJ Glanville was under no obligation to question Alves further because Alves had already detailed his daily activity limitations in the administrative record.

A review of the entirety of the record shows that because the record was sufficiently developed, ALJ Glanville was under no obligation to further develop the record before making his credibility determination.

    **B. The ALJ Properly Relied on the Vocational Expert's Testimony That There Were Jobs in the National and Local Economies that Alves Could Perform**

Alves argues that ALJ Glanville unreasonably relied on the vocational expert's testimony because the vocational expert did not consider the impact of the side effects of Alves' medication. (Pl.'s Mot. at 20.)

ALJ Glanville consulted a vocational expert to determine whether there were light unskilled jobs that Alves could still perform despite his moderate limitation in bending and need to alternate positions regularly. (R. at 22.) The ALJ asked the vocational expert to identify light work jobs that would allow alternating positions between sitting and standing every two hours. (R. at 38.) The vocational expert considered Alves' age, education, ability to speak English, and his work history consisting of heavy, semi-skilled work, and concluded that he could be an assembler of small products, routing clerk, and machine tender. (R. at 23, 38-42.)

At the hearing before ALJ Glanville, Alves' attorney asked the vocational expert to consider both the Alves' residual functional capacity and his alleged drowsiness as a side effect of his medication. (R. at 42-45.) In this hypothetical question, the vocational expert concluded that Alves could not work if drowsiness caused him to lie down during the day. (R. at 42-45.) Here, ALJ Glanville was under no obligation to consider the hypothetical presented by Alves' attorney, which relied on an assumption that ALJ Glanville reasonably determined was unsupported by the record. As discussed previously, ALJ Glanville reasonably discredited Alves' claim of drowsiness from his pain medication as inconsistent with the medical record.

**III.     CONCLUSION**

For the reasons discussed above, the Commissioner's determination that the Plaintiff was not disabled within the meaning of the Social Security Act during the period from April 4, 2008, through March 23, 2012, is supported by substantial evidence. Accordingly, the Defense's cross-motion for judgment is GRANTED, and the Plaintiff's motion for judgment on the pleadings is DENIED.

SO ORDERED.

Dated:  New York, New York
        September 24, 2014

                                            _____/s/_____

                                            Robert P. Patterson, Jr.
                                            United States District Judge

22

**Copies of this Opinion & Order Sent To:**

*Counsel for Plaintiff*

**Stuart Ira Ball**
Ball & Ferrari P.C.
2066 Central Park Avenue
Yonkers, NY 10710
(914) 779-2600
Email: stuart@ballandferrari.com

*Counsel for the Commissioner of Social Security*

**Monika Katherine Crawford**
Social Security Administration/Office of The General Counsel
26 Federal Plaza, Rm 3904
New York, NY 10278
(212)-264-2506
Email: monika.crawford@ssa.gov